IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FREDERICK DELANO and FRANCES DELANO, <br>     Plaintiffs, <br><br> vs. <br><br> ABBOTT LABORATORIES, <br>     Defendant. | ) <br> ) <br> ) <br> ) Case No. 2:11-cv-02475-SHM-cgc <br> ) <br> ) JURY TRIAL DEMANDED <br> ) <br> ) <br> ) |

**REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Abbott's straightforward summary judgment motion was premised on the following indisputable facts: (1) By February 2009, Mr. Delano became ill, was diagnosed with histoplasmosis and believed that his histoplasmosis was related to Humira; and (2) Plaintiffs' counsel never mentioned Mr. Delano's potential lawsuit (let alone a tolling agreement) until May 2010 – well after Tennessee's one-year statute of limitations period had expired. Plaintiffs do not and cannot dispute these critical and dispositive facts.

Plaintiffs, however, seek to avoid or delay the dismissal of their time-barred action under several unavailing theories. None of these theories provides a factual or legal basis to defeat summary judgment. *First*, Plaintiffs suggest that Abbott and its counsel somehow duped their lawyers into delaying the filing of this lawsuit. However, as detailed in <u>Section I</u>, below, Plaintiffs' counsel's improper (and inaccurate) recitation of settlement negotiations with Abbott's counsel, often concerning other lawsuits involving Humira, is inapposite to the motion before this Court. As Plaintiffs concede, Abbott was not informed of the Delano claim until May 2010, well after Tennessee's one year statute had run. Nothing in Plaintiffs' gratuitous

1

revelation of other settlement negotiations supports an inference that any tolling agreement was reached regarding this claim before Abbott was even aware of it.

*Second*, Plaintiffs mischaracterize Abbott's opening brief by creating the straw man argument that the "linchpin" of the summary judgment motion was a December 2008 label change, which Plaintiffs now dispute occurred. Plaintiffs contend they need discovery on this label change. As explained in Section II, below, Plaintiffs fare no better on this point. As an initial matter, the December 2008 label change is neither the linchpin of nor necessary to sustain Abbott's motion. To the contrary, the label change merely corroborated the material facts above, namely, that by February 2009, Mr. Delano believed his injuries were caused by Humira. The December 2008 label change simply made available to Mr. Delano even more information concerning the possible link between his condition and Humira. But, even if this Court were to conclude that there is a genuine issue of fact concerning the timing and availability of the label change, this evidence has no effect on Abbott's entitlement to summary judgment

*Third*, Plaintiffs attempt to evade the one-year statute by focusing on a bare bones breach of warranty claim that is inseparable from the same products liability claims that are clearly time-barred. Like Plaintiffs' other arguments, (and as shown in Section III, below) this theory too fails to provide a basis for denying summary judgment.

I.      **Plaintiffs Cannot Avoid Summary Judgment Under Waiver Or Estoppel Theories.**

Plaintiffs' excuse for their failure to file a lawsuit within the one year limitations period is based entirely on their characterizations of settlement negotiations (often concerning other claimants) that purportedly duped their attorney – a veteran products liability lawyer who has

"handled pharmaceutical cases for more than 17 years"[1] – into foregoing timely filing suit. As an initial matter, Abbott disputes Plaintiffs' attorneys' vitriolic and inaccurate descriptions of those negotiations. More importantly, however, those negotiations are irrelevant to this motion. The simple and undisputed fact is that Mr. Delano's claims had expired under Tennessee's one-year statute of limitation period <u>before</u> his attorneys ever mentioned Mr. Delano's claims to Abbott or its attorneys. Nothing Abbott's counsel did or said caused Plaintiffs' attorneys to delay filing suit within that limitations period, and there is no evidence that this expired claim was revived by any agreement between counsel for Abbott and Mr. Delano's lawyers.

> **A.     Abbott Did Not Waive Its Statute Of Limitations Defense By Engaging In Settlement Discussions <u>After</u> The One-Year Statute Had Already Expired.**

Plaintiffs contend that merely by entertaining settlement discussions and interviewing Mr. Delano (at his attorney's invitation), Abbott has somehow waived any statute of limitations claim.[2] However, it is axiomatic that "a defendant does not waive a statute of limitations defense merely by engaging in settlement negotiations with plaintiff." *See Michals v. Baxter Healthcare Corp.,* 289 F.3d 402, 409 (6th Cir. 2002). Plaintiffs attempt to distinguish the present case from this legal principle on two flawed grounds. *First*, Plaintiffs try to limit *Michals* to "mass tort" cases.[3] However, Plaintiffs offer no authority for limiting this proposition to the "mass tort" context, nor is such a limitation found within the *Michals* opinion itself. And in any event, by

---

[1] Rule 56(d) Affidavit of Andy Vickery ¶ 2 [Dkt. No. 23-1] ("Vickery Affidavit").

[2] Abbott counsel agreed to meet with Mr. Delano, after repeated requests by his attorney, only because they were already scheduled to meet with four other plaintiffs represented by Mr. Delano's counsel (Mr. Vickery) that same day.

[3] Pls. Mem. in Resp. in Opp. to Mot. for Summary Judgment [Dkt. No. 24-2] ("Pls. Resp.") at 6 ("This case is not a mass tort situation like that which confronted the Court in *Michals*.").

their own admission, Plaintiffs' counsel represents many Humira claimants[4], and Plaintiffs thus can offer no reason to distinguish *Michals* on this basis.

*Second*, although Plaintiffs correctly note that "depending on the individual facts and circumstances of a given case, such [settlement] activities can result in a waiver,"[5] (citing *Humphreys v. Allstate Ins. Co.*, 627 S.W.2d 933, 935 (Tenn. 1982)), they cite no facts here that could lead to such a result. Unlike the *Humphreys* claim, there were no settlement negotiations (or communications of any sort) regarding Mr. Delano's claims until the limitations period had already expired. Nor could there have been, since Abbott's counsel was not even aware of the claim until the Tennessee statute of limitations expired. Moreover, unlike the "inexperienced lay person" involved in the *Humphreys* negotiations, the settlement discussions at issue were made with (and at the request of) a sophisticated, seasoned products liability attorney who is a partner in a law firm with "extensive experience in pharmaceutical litigation."[6]

Instead, this case falls squarely in line with authority that teaches that settlement negotiations occurring after a statute of limitations has already expired do not force defendants to waive the statute of limitations defense because such negotiations place claimants "in no worse a position" than they otherwise would have been. *See, e.g., Howell v. Dept. of the Army,* 975 F. Supp. 1293, 1302 (M.D.Ala. 1997) ([T]he willingness of the Army to work with Howell towards . . . resolution of his claim in no way prejudiced his rights or deprived him of any advantage or opportunity he would otherwise have enjoyed. The negotiation . . . left Howell ***in no worse a***

---

[4] *See* http://www.humirajustice.com ("We are presently representing a number of clients all across the country who have Humira personal injury or wrongful death claims.").

[5] *See* Pls. Mem. in Resp. in Opp. to Mot. for Summary Judgment [Dkt. No. 24-2] ("Pls. Resp.") at 6 ("This case is not a mass tort situation like that which confronted the Court in *Michals*.")

[6] *See* A. Vickery's "Humira" website, available at http://www.humirajustice.com ("Our Firm has extensive experience in pharmaceutical litigation.").

*position* than if the Army had originally rejected his claim as time-barred.") (emphasis added); *Thompson v. The Capitol Police Bd.,* 120 F. Supp. 2d 78, 83-84 (D.D.C. 2000) (defendant's appearance at a mediation session after limitations had already run "did not prejudice the rights of the plaintiff, nor did it deprive him of any opportunity he would have enjoyed").

      **B.**    **Plaintiffs Cannot Show That Abbott Is Estopped From Asserting A Statute Of Limitations Defense.**

Plaintiffs rely on the same negotiation sequence to assert that Abbott is somehow estopped from asserting its valid statutory defense.[7] However, Plaintiffs' own recitation of the law belies this argument. As Plaintiffs concede, "'[t]he doctrine of 'equitable estoppel' tolls the running of the statute of limitations when, in reliance on a statement or act by the defendant ***during the applicable limitations period***, the plaintiff fails to file suit within the limitations period.'"[8] Here the facts are undisputed – by the time Plaintiffs' counsel first uttered a word regarding Mr. Delano's claims, the statute had expired. Consequently, the settlement discussions cannot be used to defeat summary judgment under an estoppel theory.

In *O'Boyle v. Shulman,* No. 3:09-CV-169, 2010 WL 1408444 (E.D. Tenn. April 4, 2010), the district court considered and rejected an equitable estoppel argument nearly identical to the one levied by Plaintiffs here. In *O'Boyle*, the court considered the impact of a tolling agreement between the parties that, like the agreement at issue here, was entered into after the statute had already expired, and which, like all tolling agreements with Delano's counsel, did not revive any expired claims. The court found:

---

[7] *See* Pls. Resp. at 10-11.

[8] *See id.* at 10 (quoting *Ne. Knox Util. Dist. v. Stanfort Const. Co.*, 206 S.W.3d 454, 461 (Tenn. Ct. App. 2006) (emphasis added)).

that the tolling agreement between the parties cannot save plaintiffs' claims as it was not entered into until October 19, 2006, more than one year after September 27, 2005. Moreover, the agreement expressly provided that the agreement would not be deemed to revive any claim that was already barred on the date of the agreement. Because the cause of action accrued on September 27, 2005, the one-year statute of limitations expired before entry of the first tolling agreement and thus is time barred. *Id.* at *8

Other courts have likewise refused to apply equitable estoppel to avoid dismissal in similar situations. *See, e.g., Gieringer v. Silverman,* 731 F.2d 1272 (7th Cir. 1984) (declining to determine whether communications between parties were negotiations sufficient for the estoppel rule, because the limitations period expired one month before the commencement of any negotiations, and holding that "equitable estoppel still cannot operate to preclude summary judgment on statute of limitations grounds in this case.").

Plaintiffs' estoppel claims should also be rejected because the undisputed facts show that Abbott did not "engage in conduct specifically designed to prevent the plaintiff from suing in time." *See Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 145 (Tenn. 2001);[9] *see also Massi v. Lomonaco,* No. 3:10-CV-258, 2011 WL 1258054, at *3 (E.D. Tenn. Mar. 31, 2011) ("Courts have refused to apply equitable estoppel when there is no evidence that the plaintiff's failure to bring the action was attributable to deception or misconduct on the part of the defendants that was specifically designed to prevent the plaintiff from timely filing his complaint."). To the contrary, at the time of the negotiations and tolling agreement, Plaintiffs' attorneys had the option of filing the lawsuit in Illinois state or federal court, and, as Plaintiffs argue, their claims would not be time barred under the tolling agreement if filed in Illinois because Illinois choice of law rules would have required the application of Illinois' two year statute of limitations for personal injury claims instead of Tennessee's one year statute. Under these circumstances, it is

---

[9] Cited in Pls. Resp. at 10.

hardly surprising – and it cannot be the basis of any estoppel – that Abbott's counsel was prepared to engage in preliminary settlement negotiations concerning the Delano claim, even though Tennessee's statute of limitations had already expired. Only Plaintiffs and their counsel know why they chose to file in Tennessee, where the Tennessee statute so clearly barred their claims, and why they chose not to file in Illinois – as Plaintiffs counsel has done in at least six other claims.[10] But that decision was Plaintiffs' alone. The consequences of that decision, which was made without any knowledge of or influence by Abbott or its counsel, cannot be visited upon Abbott.

## II. Requests For Discovery Related To The December 2008 Label Provide No Basis To Avoid Summary Judgment.

Plaintiffs contend that "[t]he linchpin of Abbott's argument is its allegation that the Humira label was changed on December 22, 2008, to include the very warnings that the Delanos argue should have been included before he took the drug."[11] Plaintiffs then "dispute" "that the Humira label was actually 'revised' in December 2008,"[12] and seek to defer a ruling on this motion until discovery has been completed on a laundry list of issues ostensibly related to the December 2008 label.[13] Plaintiffs' mischaracterization of Abbott's motion and their unsupported speculation that the label may not have been changed does not create a disputed issue of fact that impacts this motion. Evidence concerning the label change, while corroborative of Abbott's

---

[10] *See, e.g.,* Cook Cty, Illinois Case Nos. 11-L-004270, 11-L-006801, 11-L-007856, 11-L-009236, 11-L-010787, 11-L-010997.

[11] Pls. Resp. at 3.

[12] Pls. Resp. to Defs. Stmt. of Undisputed Facts [Dkt. No. 25] at 2, ¶21. Plaintiffs also contest the availability of the December 22, 2008 label because it was stamped as "confidential" when produced to plaintiffs in another case. (*See id.*) However, this letter was produced with hundreds of thousands of pages of additional documents, and the inadvertent stamping of plainly public document as confidential does not change the fact that the label was available and disseminated.

[13] *See* Pls. Resp. at 4.

7

position on the statute of limitations, is not relevant to the statute of limitations – the only relevant facts are undisputed. Accordingly, Plaintiffs asserted need for discovery cannot forestall or prevent a ruling on Abbott's motion.

> A. **The "Linchpin" Of Abbott's Motion Is The Undisputed Fact That, In February 2009, Mr. Delano Knew Of His Injury And Believed Humira Was Its Cause.**

Abbott's motion is based on a simple, undisputed proposition: "[i]n February 2009, Mr. Delano knew of his injury and believed Humira was its cause."[14] Plaintiffs do not (and cannot) dispute that, "[i]n February of 2009, as Mr. Delano sought treatment for his illness, he repeatedly told nurses and doctors that he believed Humira was the cause of his condition."[15] *This* undisputed fact is dispositive on the question of when the statute of limitations began to run. *See Willis v. Wal-Mart Stores, Inc.*, No. 1-09-0095, 2011 WL 4449647, at *2 (M.D. Tenn. Sept. 26, 2011) ("the statute begins to run when plaintiffs knew or should have known of the injury which forms the basis of their claims") (citing *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001)). *This* undisputed fact is the "linchpin" of Abbott's motion.

> B. **The December 2008 Label Change Provided Additional Corroborative Facts Confirming That, By February 2009, That Statute Had Begun To Run On Mr. Delano's Claims.**

Because they cannot dispute what Mr. Delano himself had already concluded in February 2009, Plaintiffs attempt to drum up a disputed issue of material fact by unilaterally characterizing

---

[14] *See* Mem. of Supp. of Defs. Mot. for Summary Judgment ("Defs. Mem.") [Dkt. No. 9-1] at 8 (citing Defs. Stmt. of Undisputed Facts ¶¶ 26-31).

[15] *See id.* at 6 (citing Defs. Stmt. of Undisputed Facts ¶¶ 26-31). Plaintiffs do not dispute any of the facts proffered by Abbott to support this statement. *See generally* Pls. Resp. to Defs. Stmt. of Undisputed Facts (no dispute on Facts ¶¶ 26-31).

8

Abbott's reference to its December 2008 label change as the "linchpin" of Abbott's motion.[16] To the contrary, Abbott referenced the December 2008 label changes as merely additional evidence of the information available to Mr. Delano about histoplasmosis and Humira – reinforcing plaintiffs' own admission that, but February 2009, Mr. Delano knew of his illness and attributed its cause to Humira.[17] However, this Court need not consider the evidence concerning the December 2008 label change: Abbott is entitled to summary judgment under well established authority because the statute began to run when Mr. Delano knew of his injury, which indisputably occurred by February 2009.[18]

Moreover, even apart from the December 2008 label change, there is no dispute that by February 2009, Mr. Delano not only had knowledge of his injuries and believed them to be caused by Humira, but also had access to public information regarding any alleged wrong by Abbott that could have readily been discovered through reasonable diligence. For example, Plaintiffs do not dispute that on September 4, 2008, "[m]onths before Mr. Delano's February 2009 histoplasmosis diagnosis, the FDA had issued a press release regarding the risk of

---

[16] Plaintiffs also puzzlingly "dispute" the wording of FDA approval letter. *See* Pls. Resp. to Defs. Stmt. of Undisputed Facts at 3, ¶ 23 (disputing that "[t]he FDA said in its letter approving the December 22, 2008 Humira label that Abbott's revisions to the label were 'consistent with' the FDA's communication with Abbott following the September 4, 2008 letter," claiming "The phrase does not appear in this letter.") Yet that is precisely what the letter says. *See* Defs. Stmt. of Undisputed Facts, Ex. 2, at 1 (Dec. 22, 2008 FDA approval letter) ("Your supplemental biologics license application provides for revisions to the labeling for HUMIRA® (adalimumab), consistent with our December 5, 2008, communication.").

[17] In any event, the label change, as approved in December 2008, *did* occur. Abbott submitted its electronically formatted revised label to the FDA on December 31, 2008. *See* Ex. 1 (Dec. 31, 2008 letter to FDA confirming electronic submission); Ex. 2 (Dec. 31, 2008 FDA confirmation of electronic submission); *see also* 21 CFR 314.50(1). And, in accordance with FDA regulations, the revised label would have been available to the public through the National Library of Medicine's drug information portal (the "DailyMed"), which provides access to "what was most recently submitted by drug companies to the Food and Drug Administration (FDA) as drug listing information (See 21 CFR part 207)." *See* http://dailymed.nlm.nih.gov; *see also* Defs. Stmt. of Undisputed Facts, Ex. 2 at 2 (Dec. 22, 2008 FDA approval letter) ("Upon receipt [of electronically formatted label], we will transmit that version to the National Library of Medicine for public dissemination.").

[18] *See* Defs. Mem. at 11-12.

9

histoplasmosis associated with Humira (and other TNF inhibitors)."[19]  This FDA release received a spate of national and local publicity, not only because of the particular issue involved, but also because it was one of the first times the FDA had exercised its authority to require a label change under a recently-enacted law.[20]

Here, because the FDA had already addressed histoplasmosis warnings even further in a highly publicized press release, the "public record here was sufficient to alert Plaintiffs as to a possible connection between" TNF blockers such as Humira and "health risks," and a potential failure-to-warn claim.[21]  *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 722 (6th Cir. 2004) ("the rule in this Circuit is that '[w]here events receive … widespread publicity, plaintiffs may be charged with knowledge of their occurrence.'" quoting *Hughes v. Vanderbilt Univ.,* 215 F.3d 543, 548 (6th Cir. 2000) (finding that Plaintiffs should have been aware of a potential personal injury claim and granting summary judgment on statute of limitations grounds)).[22]

### C.  Plaintiffs Cannot Invoke Rule 56(f) To Delay Summary Judgment By Seeking Discovery That Would Have No Bearing On This Dispositive Issue.

---

[19] *See* Defs. Stmt. of Undisputed Facts ¶ 19 (citing Cmplt. ¶ 64; Cmplt. Ex. B).

[20] *See* Cmplt. ¶ 36.  *See also, e.g.,* Ricardo Alonso-Zaldivar, *FDA Orders Stronger Warnings for 4 Arthritis Drugs*, ASSOCIATED PRESS, Sept. 4, 2008, available at http://www.usatoday.com/news/health/2008-09-04-2127495635_x.htm; Susan Heavey, *FDA Urges More Caution Over TNF Blocker Infections*, REUTERS, Sept. 4, 2008, available at http://www.reuters.com/article/2008/09/04/us-arthritis-fda-idUSN04324320080904; *4 Drugs Get Stronger Warnings: FDA Order Includes Abbott's Humira*, CHI. TRIB., Sept. 5, 2008, Business, at 3; Jared Favole and Shirley Wang, *Tougher Warnings Ordered on Four Drugs*, WALL ST. J., Sept. 5, 2008, at B5; Todd Neale, *FDA Demands Stronger Fungal Infection Warnings on TNF Blockers*, MEDPAGE TODAY, Sept. 4, 2008, http://www.medpagetoday.com/tbprint.cfm?tbid=10795.

[21] Plaintiffs brief also implies that the statute of limitations may not have begun to run until Dear Doctor letter was issued on May 17, 2010.  To the contrary, it is undisputed that plaintiffs' counsel first notified Abbott's counsel of Mr. Delano's claim on May 6, 2010 -- before the May 17th Dear Doctor letter. (*See* Affidavit of Renee Smith [Dkt. No. 9-6], Ex. A (May 6, 2010 Email from Carol Vickery to Renee Smith).)

[22] A "plaintiff is charged with constructive knowledge even when she claims that 'she did not hear or read any of the media reports.'"  *Ball*, 385 F.3d at 722.  The relevant inquiry in such cases is an objective one, whether a typical person would have been aware of a ***possible*** link.  *Id.*

Plaintiffs' request for discovery predicated on an inflated characterization of import of the December 2008 label change should also be denied.[23] "A party who opposes a motion for summary judgment by seeking additional discovery under Rule 56(f) . . . 'has no absolute right to additional time for discovery. . . The nonmoving party must show how postponement of a ruling on the motion will enable him to rebut the motion for summary judgment.'" *Allen v. CSX Transportation, Inc.,* 325 F.3d 768, 775 (6th Cir. 2003) (quoting *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 409 (6th Cir. 1998)). As the Sixth Circuit has cautioned:

> A party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits as otherwise required by Rule 56(e) and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.

*Emmons v. McLaughlin,* 874 F.2d 351, 356 (6th Cir. 1989).

As shown above, information regarding whether and when the December 2008 label change occurred and related material about the dissemination of that label has no "bearing on the determinative legal question" of when the statute of limitations began to run. Based on the undisputed evidence concerning Mr. Delano's own conclusions about the cause of his injury, the discovery request should be denied. *See Allen*, 325 F.3d at 775-76; *see also Ball,* 385 F.3d at 721 (denying Rule 56(f) request where "the discovery requested in Plaintiffs' Rule 56(f) affidavit was 'irrelevant' to the issue of statute of limitations."); *Boatright et. al. v. Am. Acad. of Actuaries,* No. 99-5746, 2000 WL 303020, at *2 (6th Cir. Mar. 14, 2000) (denying Rule 56(f)

---

[23] *See* Pls. Resp. to Defs. Stmt. of Undisputed Facts at 3-4, ¶21 ("[I]t will take considerable discovery, from someone actually under oath, to know (i) whether this change was actually implemented, and (ii) if so, what, if anything, Abbott did to spread the word about this important label change *before* it finally sent out the Dear Doctor letter on May 17, 2010 . . .") (emphasis in original).

11

request where "[t]here are no facts in dispute and, because Boatright's claims are time-barred, additional time for discovery would not change the outcome of this case.").

### III. Plaintiffs Cannot Avoid The Personal Injury Statute Of Limitations Through A Bare Bones Breach of Warranty Allegation.

Plaintiffs contend that their warranty claim should survive summary judgment because that claim "is not subject to the same potential one year statute of limitations of a 'failure to warn claim,'"[24] but rather is subject to the four year statute provided in T.C.A. § 47-2-725.[25] Plaintiffs' "warranty" claim is a throw-away paragraph tucked at the end of a lengthy complaint.[26]  As explained in Abbott's opening papers, this bare-bones warranty claim cannot be used to evade the statute of limitations.  Where the gravamen of Plaintiffs' complaint is one of personal injuries, not breach of warranty, the one year statute of limitations for personal injury applies. "It is well-settled law in this state that 'the gravamen of an action, rather than its designation as an action for tort or contract, determines the applicable statute of limitations.'" *Liggett v. Brentwood Builders, LLC*, Case No. M2007-00444-COA-R3-CV, 2008 WL 836115, at *3 (Tenn. Ct. App. Mar. 27, 2008) (quoting *Pera v. Kroger Co.,* 674 S.W.2d 715, 719 (Tenn. 1984) and citing *Whaley v. Perkins,* 197 S.W.3d 665, 670 (Tenn. 2006)).

Judge Anderson recently reaffirmed this approach, applying the one-year statute of limitations to breach of warranty clams where "the plaintiffs' claims in this case clearly sound in tort and therefore the statute of limitations for products liability claims applies." *See Montgomery*

---

[24] Pls. Resp. at 1.

[25] *Id.* at 2 (citing *Commercial Truck & Trailer Sales v. McCampbell*, 580 S.W.2d 765 (Tenn. 1979); *McCroskey v. Bryant Air Cond. Co.*, 524 S.W.2d 487 (Tenn. 1975); *Layman v. Keller Ladders, Inc.*, 455 S.W.2d 594 (Tenn. 1970)).

[26] *See* Cmplt. ¶ 86 ("Plaintiffs had the right to expect Abbott to stand behind its product and to bear the burden for any injuries Fred Delano sustained as a result of his use of its product under the law of Tennessee. Because Abbott has breached its warranty obligations under Tennessee law, it is further liable to Plaintiffs for their injuries.").

*V. Harrah's Ent.*, No. 08-2344-STA, 2009 WL 4591075, at *2 (W.D. Tenn. Dec. 1, 2009) (citing *Vaugh v. DP Packaging, Inc.,* 17 F. App'x 286, 291 (6th Cir. 2001)).

## CONCLUSION

For the foregoing reasons, as well as the reasons introduced in its opening brief, Defendant Abbott Laboratories respectfully requests that this Court grant summary judgment for Abbott on all of Plaintiffs' Counts.

Dated:  October 26, 2011                Respectfully submitted,


                                        /s/ Nolan M. Johnson
                                        Nolan M. Johnson (Tn. Bar No. 26399)
                                        BAKER DONELSON BEARMAN
                                        CALDWELL & BERKOWITZ, P.C.
                                        First Tennessee Bank Building
                                        165 Madison Avenue, Suite 2000
                                        Memphis, Tennessee 38103
                                        (901) 577-2261
                                        (901) 577-0849 (fax)
                                        Email: nmjohnson@bakerdonelson.com
                                        *Counsel for Defendant Abbott Laboratories*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was filed electronically on this 26th day of October 2011, and will, therefore, be served electronically upon:

Edmund J. Schmidt, III
LAW OFFICE OF EDDIE SCHMIDT
1720 West End Avenue
Suite 300
Nashville, TN 37203
(615) 425-7121
(615) 425-7110 (fax)
Email: eddie@eschmidtlaw.com
*Counsel for Plaintiffs Frederick Delano
and Frances Delano*

and that a copy were served this same date by electronic mail upon the following:

Andy Vickery
Jim M. Purdue, Jr.
Fred H. Shepherd
PERDUE KIDD & VICKERY
1330 Post Oak Blvd., Suite 1800
Houston, TX 77056-3158
(713) 574-7393
(713) 520-2525 (fax)
Email: andy@justiceseekers.com
Email: jperduejr@perdueandkidd.com
Email: fred@justiceseekers.com
*Of Counsel for Plaintiffs Frederick
Delano and Frances Delano*

                                            */s/ Nolan M. Johnson*
                                            Nolan M. Johnson

M NMJ 2270998 v1
2139310-000088  10/26/2011